Good morning and welcome to the Ninth Circuit. Before we begin, Judge Bide and I want to thank Judge Parker from Second Circuit New York for helping us out today and actually this week. Small housekeeping matter before we begin, we submitted two cases, Novick v. Morgan-Stanley and Luna-Flores v. Garland. The first case for argument today is Nseke v. Garland. Whenever you're ready you can begin and if you want to save time for rebuttal, please watch the clock. Good morning, Cameron Schlegel on behalf of Petitioner. If I have time after my opening, I would like to reserve it for rebuttal. May it please the Court. Although this petition presents multiple questions, including whether Mr. Nseke's delay in filing his asylum application was justified, because applications for withholding of removal and relief under the Convention Against Torture may be filed at any time, I will focus primarily on the BIA's adverse credibility finding. This Court has consistently held that the mere omission of details is insufficient to support an adverse credibility finding if, under the totality of the circumstances, the BIA does not suggest the applicant has fabricated his claim. Only omissions that contradict prior testimony or tell a much different and more compelling story of persecution than the application bear on an applicant's credibility. Here the IJ and BIA denied Mr. Nseke's application based on three trivial omissions that, under the totality of the circumstances, did not bear on Mr. Nseke's veracity. Rather, the record compels the conclusion that Mr. Nseke suffered violent political persecution at the hands of the Cameroonian government. In both his application and oral testimony, Mr. Nseke told a compelling story of persecution beginning in the early to mid-1990s when he was a student organizer and then in 2008 after he re-engaged in peaceful political efforts to make Cameroon a functioning democracy rather than a one-party rule state. During both periods, provincial police arrested and brutally beat Mr. Nseke on multiple occasions to punish him for his political advocacy. Nevertheless, the BIA identified three purported inconsistencies to affirm the IJ's adverse credibility finding. One, Mr. Nseke's testimony that he was beaten twice, as opposed to routinely, in 1995. Mr. Nseke's testimony regarding arrests and harassment of his family after he left Cameroon. And Mr. Nseke's testimony that he was a member of a non-profit and that he feared returning to Cameroon due to Boko Haram's emergence in the country. Contrary to the BIA's conclusion, however, the testimony on these issues is not only consistent but merely supplemented the already compelling evidence of past political persecution. Okay, Council, let's turn to your first point because I think that that one is a critical one for me. So the declaration of paragraph six does describe that he was, let's see, I've got six right here. The police would routinely take me into custody during unannounced visits. So that since that time, that time being January 1994, what year did he graduate? I believe in 1995, Your Honor. Okay, so 94-95, police would routinely take me into custody during unannounced visits, sometimes they're physically abusive, forcing kicking and threats. The IJ finds that he has embellished his testimony because he was more specific in describing the beatings in 1995 and didn't include them in his declaration, and the BIA upholds that. Do you want to address that, please? Yes, Your Honor. So if you look at the record, the record at, I believe it's 123 through 134, you'll see that the details that the BIA and IJ cited as inconsistencies were proffered on direct questioning from the IJ asking Mr. Nasiki to approximate. So in essence, he said exactly what he said in his declaration after testifying already to two prior instances of being arrested and dragged to the police station and beaten without any notice of why he was being arrested. They came and got him in 1995. He didn't recall the exact dates, which is what he testified to originally, and then the IJ asked him to approximate the dates and the number of times that these incidents occurred. So the difference in routinely versus two times, I think, was as in Iman versus Barr and Leib versus Holder was elicited on essentially cross-examination, and he had no plausible basis for wanting to embellish his testimony at that point, especially having already established what would qualify as political persecution. So the only testimony that we've got, then, is a test to a 1995 date is on, well, it's 1995, that he said that should be around early 95. Yes, around early 95. I'm not quite sure about the date. That would seem to be consistent with paragraph six. I would agree, Your Honor. So in other words, this testimony did not enhance Mr. Nasiki's claim of past persecution, nor did it materially alter his story in any way that would cast doubt on his credibility. What is more, the record reflects that each inconsistency, as we just discussed, was a conditional clarification elicited by the IJ's question, asking Mr. Nasiki to approximate dates and details. And as I said, it is implausible that Mr. Nasiki would seek to bolster his claim through responses to such questions. Moreover, Mr. Nasiki gave detailed testimony on both occasions concerning persecution he experienced in 2008, including as a result of a political rally in Douala that the government shut down at the last minute, an apparent setup for police to perform a mass arrest of political dissidents. I think this is very important. This testimony was independently corroborated by a third party, as reflected in a newspaper article submitted in the record at AR333. In its totality, Mr. Nasiki's testimony paints a detailed picture of past persecution. Under this court's precedence, Mr. Nasiki was therefore entitled to a presumption of a well-founded fear for future persecution. Because he was not afforded that presumption, this court need not even address the latter two purported inconsistencies because they both concerned events that occurred after he left Cameroon. Further to that point, although the government, in its answering brief, alludes to other purported inconsistencies that the IJ relied on, those are not an issue here. And can you address, getting to that, can you address the additional, the omitted testimony that he was being persecuted because of his membership in a non-profit group? That fact came out in his direct examination, right? Not cross-examination. That's correct, Your Honor. It is, but at least in terms of omission, this isn't something the government elicited in cross-examination that he may have forgotten. I mean, this could be seen, if we give deference to the IJ, that he was bolstering his claim by adding a new detail. I would disagree in this sense, Your Honor. If you look at paragraph, I believe it's 14 of his declaration. It's the last two paragraphs of his declaration discussing his fear of Boko Haram. It's both 13 and 14. And you compare that to the testimony where he was discussing, let's see, I believe it's 199, 198, 199, when he was discussing his membership in the non-profit, his participation in the non-profit. When you look closely at that testimony, he's not talking about persecution, past persecution in that sense, number one. But number two, his attorney was merely asking him to explain why, given that Boko Haram had not targeted other members of his family that he was aware of, why he thought he might be a target relative or as compared to them. And he was explaining that in addition to his well-known political activities, he was also a member of these non-profits. And so he would be more known than his family members, which would be a reason why Boko Haram might single him out for treatment and the government for that matter. What precisely are you asking us to do in a writing that we produce? What do you want the decredible paragraph to say? I think that this court should follow Iman versus Barr, Your Honor, and reverse and remand for consideration of whether accepting the testimony is credible. Mr. Nusiki has a- He made accepting the testimony as credible. So both the IJ's and the BIA's decision was based purely on this credibility finding. So they did not make findings on the merits that he's not entitled to withholding for other than a lack of credibility. So if he's determined to be credible, I think there's an outstanding question of whether that establishes a well-founded past persecution or a well-founded future persecution, which I believe this court could reach that finding. But if not, as it did in Iman versus Barr, I think that the proper relief is to remand for consideration with the instruction that he's found he's deemed credible and then applying the law to the facts. Time is up, but we'll give you a couple minutes for rebuttal. Thank you. May it please the court, my name is Jennifer Sager, and I represent the United States Attorney General, the respondent in this matter. I'll just jump right into the adverse credibility issue. The board relied on three omissions and inconsistencies between petitioner's testimony and his declaration to find him not credible. Those omissions and inconsistencies are present in the record, and when viewed in light of the totality of the circumstances, they constitute substantial evidence in support of that. If we thought that any one of those was not supported by the record, would that require a remand? No. This court has held that only one omission or inconsistency generally cannot support an adverse credibility finding, but because the board relied on three here, if the court finds that one is not supported by the record, the two remaining are sufficient to affirm the adverse credibility. Let's talk about 1994 in the paragraph six of the declaration. Sure. Evidence, if you can tell me how that is supported here. So, regarding the instance of beatings in 1995, what petitioner stated in his testimony versus what appears in his declaration is inconsistent, and certain information is omitted. Okay, tell me what's double omitted. He testified that on two occasions in early 1995, police came to his dorm room, took him to the police station for interrogation, and kicked him. In petitioner's declaration, it's vague and inconsistent. It doesn't mention any time frame. It says that he was received. It does cancel. That's not true. It says, since that time, which would be 1994, until I graduated, which would be 1995, police would routinely take me into custody during unannounced visits. Sometimes, they were physically abusive, pushing, kicking, threats. And then, you've got dot, dot, dot, sort of an et cetera. I mean, it's more of a general time frame, I guess, any time after 1994. But, he has much time until I graduated. That would be 1995. That's fairly specific. I mean, it doesn't, his explanation for why it wasn't included in the declaration was because he couldn't recall the exact dates. That just doesn't make sense, given that he gave dates for everything else. And then, he conveniently recalled the dates in his testimony years later, but didn't recall them. He previously gave, he previously gave months. So, in paragraph five, in December 1993, paragraph six, January 1994, since that time, January of 1994, until I graduated, which was sometime in 1995. That's fairly specific. I mean, we're in the ballpark. We're within about a year, year and a half time frame. It's not like there's, we're covering, you know, an entire lifetime of persecution. He's being fairly specific. He's still a student. I mean, I guessed in the ballpark, but his explanation was that he didn't provide certain information because he couldn't recall the exact dates. Just doesn't jive with the omission, even given that he gave a ballpark in his declaration. Why? Why doesn't it, Joan? It just, he said he doesn't recall the exact dates. It doesn't make sense that he would recall them early 1995 in his testimony, years later, and not include that. He was pressed, he was pressed hard to do it. That comes, that comes through in the IJ's question. He's pretty tough on it. Even dates aside, his, what's contained in the declaration is still, like, consistent to what he testified to. Routinely, it's not the same as being eaten twice. And sometimes being physically abused is not the same as abused two out of the two times he claims he was detained by the police. But none of this undermines a, his contention of physical abuse. I mean, if he got slapped around 12 times, three times, as opposed to six times, how does that seriously call into question his testimony about, you know, torture? I think it, what he testified to presents a very different story and version of events than what appears in his declaration. In his testimony, he claims he was beaten four times. Once in 1993, once in 1994, and twice in 1995. And that all relates to what happened to him as a student in the early 1990s. In his declaration, it only includes a beating in 1993, there's no mention of a beating in 1994, and we're unsure of how many beatings actually occurred in 1995. Well, counsel, what do we do with one night in January 1994, before my first final exams, people came to my student room, took me into custody, interrogating and threatening to end my life if I got in politics again? That does seem to be a 1994 incident, doesn't it? Right, but it doesn't mention he was beaten, it just says he was interrogated. And he's very clear in his testimony that he was beaten with everything the police had. If he was beaten on, to an inch of his life, that should have been included in his declaration. It's inconsistent. It paints a, what he testified to is four beatings, what's in the declaration is one, maybe more, we don't know. I think that's a very inconsistent picture of what he claims occurred to him in the early 1990s as a political organizer. Does the government, are they saying that he was beaten as a consequence of his political views? I'm sorry, could you repeat that? Does the government dispute that the record establishes that he was beaten as a consequence of his political views? Yes, the government does not believe he was credible in any of his claims. So, there's no, um, So the government's reading of this record is no beatings? No, I don't know, there's nothing in the record, based on the totality of circumstances, to believe, um, that this is a statement of persecution or his fears of, um, anything based on his position that this entire presentation is fabricated. We're left not knowing what, That's what you're just telling us, right? Some portions are fabricated, we're left not knowing what to believe. So I can't say exactly what portions are fabricated or not. It's just, given these inconsistencies in omission, we're left with more questions and not knowing what to believe, and those support the adverse credibility of subordination. Okay, I'm just going to belabor the point, it's the government's position that this record does not, uh, establish, uh, beatings at all. It does not compel a conclusion that he was credible on his claims of being beaten. That's not what I asked you. Please answer the question I just asked you. It's the government's view that it is not, his claims of being beaten are not to be believed. Thank you. Um, in addition to the beatings that he claimed happened in 1995, there are other omissions and inconsistencies. Um, another one that the board relied on is, relates to the number, the frequency, the dates and timing and victims of the alleged visits that the police made to his, um, family members' homes in Cameroon. He testified to countless police visits, and later estimated that number to be around 10. And testified that that occurred right after May 2008 when he left, and then they occurred again in 2014 and 2015. He testified that his brother was jailed twice, and then he also testified to, that his aunt and his sister were detained in January 2017, but January 2017 incident postdates the declaration. So, we're just talking right now about May 28, 2008, 2014, and 2015. Um, by contrast, in the declaration, petitioner stated that, um, his brother was beaten and detained twice, rather than just detained, and that his sister was arrested on countless occasions in an effort to find him. No dates were provided. There was no insinuation that police had a continuing interest in him over a seven-year course of time. Um, and it's also inconsistent regarding whether his brother was arrested or beaten and arrested. He says his sister was, um, arrested countless times before 2016, but in his testimony, he only says he, she was detained once, and that was after the declaration. So, again, we don't know what to believe here. And it's not just an addition, um, of detail, or, um, simply clarifying what was in his declaration. It's entirely inconsistent of the police interest in him, what happened to his siblings, the amount of time that they came to the family's home. And... With respect to his sisters, your claim of inconsistency, the 10 times versus countless times? Um, no. In his declaration, he said that his sister was detained countless times prior to that declaration, which was 2016. In his testimony, he only testified that his sister was detained once, and that happened in January, 2017, after the declaration. There's just, that's entirely inconsistent. Um, I see my time is about to expire, so I quickly will address the third inconsistency, and that is Petitioner's claim that he feared Boko Haram because of his, um, his stature in the community, and as a, as a, this leader of a non-profit organization. It's an entirely new claim that was brought up in direct examination. And, um... Actually, the first claim was that he was Catholic, and that's why Boko Haram was going to, was going to do it. That's correct. And then I thought that the, my reading of the record on the, on the question of the non-profit was that he simply was high profile because he had been, he had been a prominent businessman in Cameroon, and he'd been the head of this, of this non-profit, and that's what had attracted attention to him. It wasn't that he was being persecuted because he was the head of a non-profit. That's simply that it had raised his profile. He testified that Boko Haram, yeah, I mean, those were the reasons why that he was a prominent member of the community. Because of his job, because of the, his social activities, because of the non-profit. And he specifically said that Boko Haram targets people who are, you know, have status in the community. He claimed that he did all these things prior to his declaration, that none of that was included in the declaration. It was only about him being Catholic. If this was something he actually feared, that he should have included it in the declaration, and it's an entirely new basis. It has to do with the social group, not a religious claim. It doesn't, it doesn't feel, it doesn't, I don't know, it doesn't sound like it's inconsistent to me. Again, he hasn't alleged here that he was targeted because he was the head of a non-profit. He was simply adding color to the question of why they might understand that he was Catholic. Because he was a very prominent Cameroonian. I hold important positions in Cameroon society. In the past, I used to be one of the highest paid young Cameroonians. And then also, because of my social activities, I have a non-profit. I disagree. In his declaration, he said that Bo Gorham targets Catholics, and he feared them because he was a Catholic. In his testimony, he said Bo Gorham targets people who are high profile in the community. And he went on to testify why he's profile in the community, high profile in the community, and why he thinks Bo Gorham would target him on that basis. He didn't tie any of that to his religion. It's an entirely new claim for belief. It's based upon a social group. It's not based upon religion. In short, those inconsistencies and omissions constitute substantial evidence in support of the agency's adverse credibility determination, and the court should give them deference. If there's any other questions, I will rest on the briefs. Thank you. Thank you. Thank you for the additional time to respond. I'll try to be brief. So the reason I said in my opening statement that I don't think that this court really needs to look too closely at the latter two omissions that the BIA cited is because of the distinction between the past persecution and future persecution in this inquiry. So as was observed as soon as he testified before even the inconsistency, the purported inconsistency in 1995, testified and presented evidence that was uncontroverted about his being targeted for his political opinions, arrested and beaten, which I argue would establish his past persecution. And that is bolstered by the newspaper article that is at AR333, which I think is a really important piece of evidence in this case. It names Mr. Nesiki specifically. It corroborates his account of what happened in 2008, and it's consistent with what he said happened in 1995, in the early 90s. So with that lens, that should establish a presumption of a well-founded fear of future persecution under this court's precedence. And in that scenario, the latter testimony that tends to go towards the fear of future persecution I don't think can be viewed as either seeking to bolster his claim, which is a ground that this court has held is impermissible in the Zamenhof case. And then, but moreover, it has to be looked through with that presumption that then the government has the burden of rebutting. And I would just conclude by noting that the two remaining omissions are consistent with his prior testimony, and they're not, when you look at what he actually said in his declaration, he didn't say that his sister was detained once or twice or any number of times that was elicited in direct examination with respect to, you know, what he was understanding the country conditions were like in Cameroon after he left. So I think that at the end of the day, the record and the totality of the circumstances compels the conclusion that Mr. Nesiki testified credibly and has a legitimate claim to withholding of removal in Cameroon. If you thought that the record doesn't support the IJ's finding, can the IJ do a do-over or do we have to deem him credible? You know, based on the precedents that I've read, I think that the instruction is to deem him credible. I think the closest analog to this was Iman versus Barr and then also Lye versus Holder. In both cases, the court remanded with the credibility instruction to apply the facts to the law. I think that doing a do-over, sending it back to the IJ for a do-over as opposed to the BIA would, you know, potentially invite other problems. Insofar as I haven't seen a case yet where it's remanded for an entirely new proceeding at the IJ. And, you know, without getting into the stuff that this court is not reviewing, I think that there are other reasons to think that the IJ may reach the same conclusion for reasons that are not pertinent to the claim of past persecution. Thank you. Great. Thank you both for the help. I appreciate your help. Thank you, Shelegel, for taking this case on pro bono. Case has been submitted.
judges: Parker, BYBEE, LEE